IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| STANLEY EARL WINSTON, #39779-019, | ) Civil Action No. 3:06-3567-TLW-JRM |
| Plaintiff, | ) |
| vs. | ) |
| DR. CHARLENE GRICE; | ) |
| MEDICAL UNIVERSITY; | ) |
| PRESIDENT OF THE MEDICAL UNIVERSITY; | ) |
| DEAN OF THE ARTS AND SCIENCES DEPT; | ) |
| CHAIRMAN OF THE BIOLOGY DEPT; AND | ) |
| CEO OF THE MEDICAL DIVISION AT THE MEDICAL UNIVERSITY OF SOUTH CAROLINA AT CHARLESTON; | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Defendants. | ) |

Plaintiff filed this action under 42 U.S.C. § 1983 on December 19, 2006.[1] He filed an amended complaint (merely correcting the name of Defendant Dr. Charlene Grice) on February 5, 2007. Plaintiff is an inmate at the Federal Correctional Institution in Estill, South Carolina ("FCI-Estill"). On July 6, 2007, Defendant Dr. Charlene Grice ("Grice") filed a motion for summary judgment.[2] Plaintiff, because he is proceeding pro se, was advised on July 11, 2007, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendant's motion

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(d), DSC. Because these are dispositive motions, the report and recommendation is entered for review by the court.

[2] On March 6, 2007, the undersigned recommended that defendants Medical University of South Carolina, the President of the Medical University of South Carolina, the Dean of the Arts and Sciences Department, the Chairman of the Biology Department, and the CEO of the Medical Division at the Medical University of South Carolina at Charleston be dismissed without prejudice, and without issuance and service of process for those defendants. See Doc. 11.

for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. Plaintiff filed a response on August 27, 2007. He was granted an extension of time, until October 31, 2007, to file any further response. On October 22, 2007, Plaintiff filed a motion to dismiss Defendant Grice's motion for summary judgment.

DEFENDANT GRICE'S MOTION FOR SUMMARY JUDGMENT

Plaintiff alleges that correctional officers from FCI-Estill took him to the Medical University of South Carolina ("MUSC") for a cornea transplant, but Grice refused to treat him because he was an inmate. He alleges that Grice breached a contract to perform medical duties, she failed to perform her medical duties on a federal prisoner, she discriminated against him, and she made racial statements against him. Defendant Grice contends that she is entitled to summary judgment because: (1) injunctive relief is not necessary to prevent Defendants from destroying medical records;[3] (2) Plaintiff fails to establish a breach of contract; (3) Grice did not fail to perform medical duties on a federal prisoner, (4) there is no evidence of discrimination and/or racial prejudice by Grice against Plaintiff; and (5) Grice is not a proper defendant with regard to any state law claims.

1.     § 1983 Medical Claims

Plaintiff may be attempting to assert a claim under 42 U.S.C. § 1983 concerning his medical care. Grice contends that to the extent Plaintiff seeks to assert a constitutional claim against

---

[3] In his complaint, Plaintiff requests that Defendants be enjoined from destroying any of his medical records, including materials from November 21, 2006. Defendant Grice provides that Plaintiff's medical records were not destroyed and a copy of Plaintiff's records were served on him during discovery. Plaintiff's pertinent medical records have also been submitted by Grice as part of her motion for summary judgment. Thus, any claim for injunctive relief as to Plaintiff's medical records is moot.

2

her, his claim fails because she was not acting under color of law[4] and Plaintiff fails to show deliberate indifference.

In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.
>
> * * * * * * *
>
> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 182-83, 96 S.Ct. at 2925 (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted).

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation.

> Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions

---

[4]Contrary to Grice's argument, she may have been acting under color of state law if she was treating Plaintiff upon referral of Plaintiff's prison physician. See Conner v. Donnelly, 42 F.3d 220 (4th Cir.1994) (holding that a physician who treats a prisoner acts under color of state law even though there was no contractual relationship between the prison and the physician).

> sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citations omitted). . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851.

The Supreme Court defined "deliberate indifference" in the Eighth Amendment context in Farmer v. Brennan, 511 U.S. 825 (1994). The court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concern when it imposes tort liability on a purely objective basis. [Citations omitted]. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id. at 837-38.

Unless medical needs were serious or life threatening, and the defendants were deliberately and intentionally indifferent to those needs of which he was aware at the time, a plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, supra; Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Plaintiff fails to show that Grice was deliberately indifferent to any of his serious medical needs. On November 21, 2006, Plaintiff was examined by Grice, a licensed ophthalmologist specializing in corneal transplants. It was his first visit to MUSC. Plaintiff complained of severe photophobia with pain. His history was taken and examination revealed that Plaintiff previously underwent corneal transplants in both eyes. Plaintiff reported that he did not know why the transplants were performed and he did not have any medical records of the transplants with him to provide a more accurate medical history. MUSC 003-004.[5] Plaintiff brought a letter from Dr. Mark Goulas (an ophthalmologist in Bluffton, South Carolina) to Dr. Z. Robert Vendel, the clinical director at FCI-Estill. Dr. Goulas stated that he found no signs of corneal rejection and recommended evaluation by a corneal specialist. MUSC-007-009. Plaintiff also provided two pages from Dr. Lee Grantham, who treated Plaintiff in 2001, for corneal rejection. MUSC-012-013.

Grice ,with resident Dr. Joseph Biber ("Biber") in the room, examined Plaintiff. Grice Aff., Para. 4, Biber Aff., Para. 3. Grice states that she conducted a full and thorough eye examination of Plaintiff, which included dilating his eyes and using various pieces of equipment to make certain of the status of his eyes. She determined that Plaintiff's corneas were clear, he was not rejecting the transplants which had been performed nearly a decade prior, and he had a problem with a stitch from the transplant that had come loose. Grice removed the stitch and determined that Plaintiff needed no further medical attention from her. Grice Aff., Para. 6; MUSC-003-004. Plaintiff has presented no evidence to show that he was supposed to undergo a corneal transplant with Grice on November 21, 2006. Grice states that this type of surgery is not done on a first visit; the surgery requires a

---

[5]"MUSC-___" refers to Plaintiff's medical records, attached to Grice's motion for summary judgment.

lengthy work-up process to determine whether a corneal transplant is necessary; and if a patient needs a transplant, the patient must go on a waiting list to find a donor of the human tissue to be transplanted. Grice Aff., Para. 7.

Dr. Biber states that Grice did not refuse treatment to Plaintiff because he is an inmate, care was rendered to Plaintiff, and Grice treated Plaintiff no differently than she does any other patient. Biber Aff., Para. 4. In her treatment notes, Grice wrote that Plaintiff's grafts were clear, he had severe irregular astigmatism in both eyes, he had no signs of rejection, he needed to be seen by the corneal doctor who did his transplants as the care needed was considered part of post-op care, and a wedge resection should be considered. MUSC-003.

Plaintiff appears to argue that he should have been given corneal transplants because he was examined approximately four months later by another corneal specialist, Dr. Stephanie Croll, who stated that his left eye needed corneal transplant surgery again and that Dr. Croll called Dr. Vendel and Commander Sims at FCI-Estill to see who was going to pay for surgery. Plaintiff's Aff., at 2. Plaintiff, however, has presented no medical records showing this. To the extent that Plaintiff disagrees with his medical care, he fails to show that his constitutional rights were violated. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). The provision of medical care by prison officials is not discretionary, but the type and amount of medical care is discretionary. See Brown v. Thompson, 868 F. Supp. 326 (S.D.Ga. 1994). A disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. See Smart v. Villar, 547 F.2d 112 (10th Cir. 1976); Lamb v. Maschner, 633 F. Supp. 351, 353 (D.Kan. 1986). Although Plaintiff may believe that he

6

should have received different medical treatment, his allegations do not rise to the level of a constitutional violation.

2.  Breach of Contract

Plaintiff appears to allege that Grice breached a contract with the Federal Government to perform corneal transplant surgery on Plaintiff. See Complaint at 1 and 7. He claims that MUSC "received a contract for the visit of Mr. Winston months prior to the scheduled visit and the surgery was to take place." Complaint at 7. Grice contends that there was no breach of contract because she has no contract with the federal prison system to provide any services to its inmates. Plaintiff fails to show that a contract existed between the federal prison system and Grice or MUSC to perform corneal transplant surgery on him.

3.  Race Discrimination/Verbal Harassment

Plaintiff alleges that Grice discriminated against him and made racial statements. Specifically, he claims that Grice stated that she was "not wasting taxpayers' money on a prisoner" and told him "That's just how you people are. You get arrested and then want the taxpayers to pay for expensive surgeries while you are in prison, and I'm not going to do it." Complaint at 4-5. Grice contends that Plaintiff has not alleged any racial discrimination or prejudice in his complaint, he has set forth no evidence to show that he was discriminated against due to his race or status as a prisoner, and he fails to show that any verbal abuse constitutes a constitutional violation.

Although racial discrimination claims are actionable, Henry v. Van Cleve, 469 F.2d 687 (5th Cir. 1972), merely conclusory allegations of discrimination are insufficient to state a claim. See Chapman v. Reynolds, 378 F. Supp. 1137 (W.D. Va. 1974)("[A]bsent some factual evidence the court will not look behind the determinations of prison officials on mere accusations that they are

7

racially motivated.").. Here, Plaintiff has not even asserted any comments made by Grice that were based on his race.

Further, Plaintiff fails to show that Defendant Grice's alleged comments rise to the level of a constitutional violation. See Patton v. Przybylski, 822 F.2d 697, 700 (7th Cir.1987); Carter v. Morris, 164 F.3d 215, 219 n. 3 (4th Cir. 1999); see also Brown v. Byrd, 2000 WL 1780234 (E.D.Pa. Dec. 1, 2000)(prison guard's comments to the effect of "you damn Muslims" while distasteful and inappropriate, did not rise to the level of a constitutional violation under § 1983). Additionally, defamatory statements alone do not state a cognizable claim under 42 U.S.C. § 1983. Paul v. Davis, 424 U.S. 693 (1976). Further, verbal abuse of inmates, without more, fails to state a claim under § 1983. Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996)(disrespectful and assaultive comments did not violate Eighth Amendment); McDowell v. Jones, 990 F.2d 433, 434 (8th Cir. 1993)(verbal threats and name calling are usually not actionable under § 1983); Northington v. Jackson, 973 F.2d 1518, 1524 (10th Cir. 1992); Collins v. Cundy, 603 F.2d 825 (10th Cir. 1979)(sheriff's idle threat to hang a prisoner did not give rise to a § 1983 claim); Lamb v. Hutto, 467 F. Supp. 562 (E.D.Va. 1979)(verbal assaults and threats do not state a constitutional claim actionable under § 1983).

4.      State Law Claims

Plaintiff may be attempting to assert a claim under South Carolina law for negligence.[6] Defendant Grice contends that she did not fail to perform her medical duties and that

---

[6]Plaintiff alleges that this action is brought based on diversity. He has not, however, provided his state of residence. The diversity statute, 28 U.S.C. § 1332(a), requires complete diversity of parties and an amount in controversy in excess of $75,000. Complete diversity of parties means that no party on one side may be a citizen of the same State as any party on the other side. Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 372-74 (1978); see also Marshall v. Toyota Motor Sales, U.S.A., Inc., 181 F.3d 89 (4th Cir. 1999)[Table]("The presence of a
(continued...)

she is not a proper defendant with regard to any state law claims pursuant to the South Carolina Tort Claims Act, S.C. Code § 15-78-10 et seq. ("SCTCA").

Plaintiff appears to allege that Defendant Grice was negligent in refusing to provide him with medical treatment. In an action for negligence in South Carolina, a plaintiff must allege and show: (1) a duty of care owed by a defendant to a plaintiff; (2) a breach of that duty by negligent act or omission, and (3) damage proximately resulting from the breach. South Carolina Ins. Co. v. James C. Greene & Co., 348 S.E.2d 617, 620 (S.C.Ct.App. 1986). The absence of any one of these elements renders a cause of action insufficient. South Carolina Ports Authority v. Booz-Allen & Hamilton, 346 S.E.2d 324, 325 (S.C. 1986). Plaintiff fails to show that Grice breached any duty to treat him, as Grice did treat Plaintiff, as discussed above.

Further, Defendant Grice contends that she is not a proper defendant with regard to any state law claims pursuant to the SCTCA. She provides that she was an employee of MUSC and was acting within the capacity of her employment at all times relating to Plaintiff's allegations. The SCTCA specifically grants immunity to government employees, while working within the scope of official duty. S.C. Code Ann. § 15-78-70(c). "When a plaintiff claims an employee of a state agency acted negligently in the performance of his job, the SCTCA requires a plaintiff to sue the agency for which an employee works, rather than suing the employee directly." Flateau v.

---

[6](...continued)
defendant who is a citizen of the same state as Plaintiff destroys complete diversity and, therefore, federal jurisdiction"). Defendants appear to all be residents of South Carolina. If Plaintiff is a resident of South Carolina, complete diversity of the parties would be lacking. To the extent diversity jurisdiction is lacking, it is recommended that, pursuant to 28 U.S.C. § 1367(c)(3), any remaining state law claims be dismissed.

Harrelson, 584 S.E.2d 413, 418 (S.C. Ct. App. 2003); see also Proveaux v. Medical University of South Carolina, 482 S.E.2d 774 (S.C. 1997).

PLAINTIFF'S MOTION TO DISMISS/MOTION FOR DEFAULT JUDGMENT

Plaintiff contends that Defendant Grice's motion for summary judgment should be dismissed because she has submitted a false affidavit from Biber to support her motion. As discussed above, Biber stated that he was present when Plaintiff was examined by Grice. He states that he wrote one sentence in the chart, which was for the inmate/institution to call if there were questions. In support of his argument, Plaintiff only presents his own assertion that there was no other physician present at his examination by Grice. He claims that others will support this assertion, but has presented no such evidence. Plaintiff also claims that Grice committed fraud because she presented a page of examination notes that differs from another page of the notes produced to him earlier. It appears that the copy submitted by Grice inadvertently has part of her signature cut off at the bottom of the page. This appears to merely be a copying mistake. The other difference between the two documents is that the copy which Plaintiff first received appears to have come from FCI-Estill rather than MUSC. The FCI-Estill copy is stamped by Dr. Z. Robert Vendel and contains a handwritten note "DR GRICE 11-27-06" and what appears to be the initials "ZRV" which is not on the copy attached to Grice's motion for summary judgment. Thus, there is no indication that the copy submitted by Grice is not the document that was in Plaintiff's MUSC file.

Plaintiff also requests that this court declare default judgment against Grice because the court ordered her to answer or respond to his complaint within 20 days of the court's order which was

filed on March 6, 2007. Grice filed her answer on April 2, 2007 and re-filed it on June 11, 2007.[7] Contrary to Plaintiff's argument that Grice was required to file an answer within 20 days of the court's order authorizing service, "a defendant shall serve an answer [] within 20 days after being served with the summons and complaint."[8] Fed. R. Civ. P. 12. The only proof of service filed in this case indicates that Grice was served by the Marshal's service on May 21, 2007. Grice filed her answer within 20 days of May 21, 2007.

## CONCLUSION

Based on review of the record, it is recommended that Defendant Grice's motion for summary judgment (Doc. 33) be granted. It is also recommended that Plaintiff's motion to dismiss and/or for default judgment (Doc. 45) be denied.

Respectfully submitted,

s/Joseph R. McCrorey
United States Magistrate Judge

November 9, 2007
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.
Notice of Right to File Objections to Report and Recommendation**

---

[7] In her re-filed answer, Grice wrote that after she filed her answer the clerk's office instructed the United States Marshal's Office to re-serve the complaint, it was served on May 21, 2007, and out of an abundance of caution she re-filed and re-served her answer.

[8] Even if Plaintiff could show that Defendants were in default, the clear policy of the Federal Rules of Civil Procedure is to discourage judgment by default and to encourage disposition of claims on their merits. Reizakis v. Loy, 490 F.2d 1132 (4th Cir. 1974) and Tolson v. Hodge, 411 F.2d 123 (4th Cir. 1969). Plaintiff fails to show any prejudice from the alleged default. The court may also consider whether or not the moving party acted promptly, Consolidated Masonry & Fireproofing, Inc. v. Wagman Constr. Co., 383 F.2d 249 (4th Cir. 1967) and whether or not the moving party has been disadvantaged by the error or neglect of his attorney. United States v. Moradi, 673 F.2d 725, 728 (4th Cir. 1982).

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).